UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES DAVIS, III,<br><br>                                    Plaintiff,<br><br>   v.<br><br>KEVIN M. CHEVERKO, COMMISSIONER, WESTCHESTER COUNTY DEPARTMENT OF CORRECTION; SERGEANT DICHIARA; C.O. J. SCHILIRO; C.O. D. CARDILLO; C.O. R. GRAHAM; C.O. L. MELENDEZ; C.O. S. VIAU; C.O. E. ROSARIO,<br><br>                                  Defendants. | No. 16-CV-4034 (KMK)<br><br>OPINION AND ORDER |

Appearances:

James Davis, III
Port Chester, NY
*Pro Se Plaintiff*

David Henry Riddle Chen, Esq.
Syma B. Funt, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff James Davis, III ("Plaintiff") filed the instant complaint ("Amended Complaint") pursuant to 42 U.S.C. § 1983 against Commissioner of the Westchester County Department of Correction Kevin M. Cheverko ("Cheverko"), Sergeant DiChiara ("DiChiara") (collectively, "Defendants") and Correction Officers J. Schiliro, D. Cardillo, R. Graham, L.

Melendez, S. Viau, and E. Rosario. (Am. Compl. (Dkt. No. 46).)[1] Plaintiff alleges that Defendants violated his rights under the Eighth Amendment when he was forcibly thrown to the floor and forced to lay in contaminated water while detained at Westchester County Jail. (Am. Compl. 2–3.)

Before the Court is Defendants' Motion to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. To Dismiss (Dkt. No. 38); Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 39).)[2] Defendants claim that Plaintiff fails to state an Eighth Amendment claim against Cheverko and DiChiara. (Defs.' Mem. 7, 11–12.) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, and a letter submitted in response to Defendants' request for a pre-motion conference, (Letter from Plaintiff to Court (May 5, 2017) ("Obj. Letter") (Dkt. No. 30)), and are taken as true for the purpose of resolving the instant Motion. During the time of the alleged events, Plaintiff was a pretrial detainee confined to Westchester County Jail. (Am. Compl. 1; Letter from David H. Chen, Esq., to Court (Nov. 8, 2017) ("Status Letter") (Dkt. No. 47).)[3]

---

[1] None of the filings before the Court uses Sergeant DiChiara's first name.

[2] The Motion was filed on behalf of all Defendants, but the Court denied the Motion without prejudice as to Defendants J. Schiliro, D. Cardillo, R. Graham, L. Melendez, S. Viau, and E. Rosario, who had argued that the case against them should be dismissed for failure to serve. (Order of Service 3 (Dkt. No. 44); Defs.' Mem. 8.) In the same Order, the Court directed the U.S. Marshals Service to help Plaintiff effectuate service on those Defendants. (Order of Service 3.) The Motion to Dismiss is still pending as to Defendants Cheverko and DiChiara. (*Id.*)

[3] On November 7, 2017, the Court ordered the Parties to inform the Court "whether Plaintiff was a convicted prisoner or a pretrial detainee when the alleged violations occurred in

2

On March 27, 2016, at approximately 9:45 p.m., Plaintiff's cell block was flooding. (Am. Compl. 2–3.) Sergeant DiChiara ordered the jail's Emergency Response Team ("ERT") "to take [Plaintiff] out of [his] cell (even though [Plaintiff] had nothing to do with the flooding that was going on in the block)." (*Id.* at 3.) Plaintiff "was handcuffed behind [his] back and brought from [his] cell and then thrown to the floor[,] causing serious injuries to [his] person." (*Id.* at 2–3; *see also id.* at 2 (Plaintiff "was forcibly thrown to the floor by the [ERT]"); *id.* at 3 ("[Plaintiff] was thrown to [the] floor by the [ERT] causing injuries."); Obj. Letter ("The [ERT] executed unnecessary use of force not to mention excessive force.").) Specifically, Plaintiff's "knee[s] and back [were] injured as [he] was thrown to the floor," and he "started having sever[e] chest plains as [he] was handcuffed and put into a chair for about a[n] hour and a half or more." (Am. Compl. 3.) Other detainees were also "involved and hurt as a result of these actions," but "nobody received medical attention at the time of this assault." (*Id.*) Plaintiff was also "forced to lay in contaminated water that was filled with feces and urine." (*Id.* at 2.)[4]

Plaintiff requests that DiChiara "be demoted and put somewhere where he can't hurt anybody else (inmates) with the use of force." (*Id.* at 5.) He also requests "compensation for [his] injuries and further medical cost[s]" in the amount of 200 million dollars, plus 10 million

---

March 2016." (Dkt. No. 43.) Defendants responded the next day, explaining that Plaintiff was a pretrial detainee in March 2016 and attaching documentation to that effect. (Status Letter.)

[4] It is unclear whether (1) Plaintiff was handcuffed, then sat in a chair for an hour and a half, and then pushed to the ground where he lay in contaminated water, (2) whether he was forced to the ground and injured before he was put in a chair, where he sat upright, in handcuffs, or (3) whether he was laying on the ground while handcuffed in a chair. (*Compare* Am. Compl. 2 ("I was forcibly thrown to the floor by the [ERT] and forced to lay in contaminated water"), *with id.* at 2–3 ("I was handcuffed behind my back and brought from my cell and then thrown to the floor causing serious injuries."), *and with id.* at 3 ("My knee[]s and back was injured as I was thrown to the floor[.] I started having sever[e] chest pains as I was handcuffed and put into a chair for about a[n] hour and a half or more.").)

dollars in punitive damages "for the cruel and unusual punishment and violation of [his] Eighth Amendment rights." (*Id.*)

B. Procedural Background

Plaintiff filed his initial Complaint on May 26, 2016, against Cheverko, DiChiara, and an unspecified number of John Doe members of the ERT. (Compl. (Dkt. No. 2).) On June 14, 2016, the Court issued an Order of Service, directing service on the named Defendants, Cheverko and DiChiara, and directing that, pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), the Westchester County Attorney, attorney for and agent of the Westchester County Department of Correction ("DOC"), identify the John Doe members of the ERT within 60 days so that Plaintiff could amend his complaint and these Defendants may be served. (Order of Service (Dkt. No. 6).) The Order of Service further specified that, within 30 days of receiving this information, Plaintiff was to file an Amended Complaint naming the John or Jane Doe Defendants, after which the Court would issue a new Order of Service for those new Defendants. (*Id.*)

Cheverko and DiChiara were served on August 16, 2016. (*See* Dkt. Nos. 14, 15.) On October 5, 2016, the Westchester County Attorney provided to Plaintiff and the Court the names of the six unnamed ERT Defendants and their service addresses, thereby complying with Defendants' *Valentin* obligations. (Letter from Syma B. Funt, Esq., to Court (Oct. 5, 2016) (Dkt No. 13).) However, Plaintiff did not file an Amended Complaint within the assigned timeframe, and on December 22, 2016, Defendants requested in a pre-motion letter that Defendant "ERT Response Team" be dismissed from the Action. (Dkt. No. 19.) On February 1, 2017, the Court held a pre-motion conference at which Plaintiff failed to appear, and adopted a briefing schedule. (*See* Dkt. (Entry for Feb. 1, 2017).) However, on February 6, 2017, Plaintiff filed a letter to the

Court requesting he be allowed to proceed with an Amended Complaint, which he attached. (Letter from Plaintiff to Court (Feb. 6, 2017) (Dkt. No. 24).) On February 27, 2017, the Court permitted Plaintiff to file the Amended Complaint, but warned Plaintiff "that failure to meet . . . deadlines in the future may result in the rejection of any late filings," and gave him "60 days to serve the newly-named defendants." (Dkt. No. 27; *see also* Am. Compl. (Dkt. No. 46).)

Defendants submitted a pre-motion letter on May 1, 2017, indicating the grounds on which Defendants would move to dismiss. (Dkt. No. 29.) On May 5, 2017, Plaintiff filed a letter in response to Defendants' pre-motion letter claiming he "sent [his] Amended Complaint well within the timeframe" and requesting to "come before [the Court] to argue why [his] § 1983 lawsuit should continue." (Obj. Letter.) Pursuant to a memo endorsement, the Court set a briefing schedule, (Dkt. No. 31), and Defendants filed a Motion to Dismiss and accompanying papers on June 7, 2017, and then, after fixing docket entry errors, again on August 10, 2017, (Dkt. Nos. 32, 33; Dkt. Nos. 38–40).[5] On June 15, 2017, Plaintiff filed a letter to the Court in response to Defendants' Motion, reiterating his request for a "chance to argue [his] case in front of the [Court]" and claiming that "the County Attorney is trying to fool the Court[] with trickery and deceit." (Letter from Plaintiff to Court (June 15, 2017) (Dkt. No. 34).)[6] Defendants filed a reply in further support of the Motion to Dismiss, noting that Plaintiff's letter—"[t]he only thing Plaintiff has filed" in opposition to the Motion—"does not address any of Defendants'

---

[5] Although timely, Defendants' initial filings were deficient and had to be re-filed on the docket. (*See* Dkt. Nos. 32, 33.)

[6] On July 20, 2017, Plaintiff also filed a letter to the Court requesting he be assigned counsel, (Letter from Plaintiff to Court (July 20, 2017) (Dkt. No. 37)), but the Court explained in a memo endorsement that Plaintiff's request could not be considered until he filled out the Application for the Court to Request Pro Bono Counsel form, which was mailed to him on July 24, 2017, (*see* Dkt. No. 42; Dkt. (Entry for July 24, 2017)). Plaintiff has not filed that Application as of the date of this Opinion.

substantive dismissal arguments," and "reiterat[ing] their request for dismissal with prejudice, as Plaintiff has already amended once." (Defs.' Reply Mem. in Supp. of Mot. to Dismiss (Dkt. No. 41).)

On November 7, 2017, the Court issued an Order of Service directing the U.S. Marshals Service help Plaintiff to effect service on Defendants J. Schiliro, D. Cardillo, R. Graham, L. Melendez, S. Viau, and E. Rosario, who had never been served after Plaintiff filed the Amended Complaint, and therefore denied without prejudice the Motion to Dismiss filed by those Defendants. (Order of Service (Dkt. No. 44).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff

6

has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013). Finally, the "failure to oppose Defendants' [M]otion [T]o [D]ismiss does not, by itself, require dismissal of [Plaintiff's] claims." *Leach v. City of New York*, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013). Rather, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

B.  Analysis—Personal Involvement

Defendants Cheverko and DiChiara argue that the Amended Complaint should be dismissed against them because they were not personally involved in the alleged constitutional violations. (Defs.' Mem. 7 (Cheverko); Status Letter (DiChiara).) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or

8

> custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that both Cheverko's and DiChiara's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

    1. Cheverko

Plaintiff has failed to plausibly allege Cheverko's personal involvement in the alleged constitutional deprivations. The gravamen of the Amended Complaint is that DiChiara ordered the ERT to remove Plaintiff from his cell without justification, and the ERT did so by using excessive force and by forcing Plaintiff to lay in contaminated water. (*See generally* Am. Compl.) The Amended Complaint contains no allegations whatsoever that Cheverko was involved in, aware of, or somehow permitted the incidents that took place on March 27, 2016. Indeed, Cheverko's name and position as Commissioner of the Westchester Department of Correction appear nowhere in the Amended Complaint, other than in the caption. (Am. Compl. 1–2.) This alone is grounds to dismiss the claims against Cheverko. *See Ortiz v. Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (concluding that the complaint failed to allege personal involvement when "the only named reference to [the] defendants . . . is in the caption of the [c]omplaint, and the only additional references to [the]

9

defendants are merely conclusory statements about their personal involvement"); *Smith v. Doe*, No. 10-CV-3136, 2010 WL 4964394, at *1 (S.D.N.Y. Dec. 1, 2010) (dismissing all claims against the District Attorney because he was "only mentioned in the caption and the list of defendants"); *Haygood v. City of New York*, 64 F. Supp. 2d 275, 279 (S.D.N.Y. 1999) ("The proposed third amended complaint manifestly states no legally sufficient Section 1983 claim against [the defendant]. He is mentioned only in the caption."). Moreover, Cheverko cannot be held personally liable for constitutional violations merely "because he was in a high position of authority in the prison system." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (same). The Court therefore dismisses Plaintiff's claims against Cheverko.

2. DiChiara

Plaintiff has also failed to plausibly allege DiChiara was personally involved in the alleged constitutional violations. The Amended Complaint alleges that DiChiara ordered the ERT to take Plaintiff "out of [his] cell," even though Plaintiff was not involved with the flooding occurring in the cell block. (Am. Compl. 3.) However, even assuming that this order was unjustified because Plaintiff was not responsible for the flooding, Plaintiff does not allege that DiChiara ordered the ERT to use *force* to take Plaintiff out of his cell, let alone excessive force, or that he ordered the ERT to force Plaintiff to lay in contaminated water. (Am. Compl. 2.)[7]

---

[7] In any event, absent more detailed factual allegations, the Amended Complaint fails to state a constitutional claim for exposure to contaminated water. *See Wiley v. Kirkpatrick*, 801 F.3d 51, 66–68 (2d Cir. 2015) (explaining that claims of allegedly unconstitutional unsanitary conditions of confinement must be analyzed based on their severity and duration); *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 491 (S.D.N.Y. 2014) (listing cases in the Second Circuit holding that "sporadic or brief exposure to waste does not amount to a constitutional violation," and finding that a "single unfortunate incident" of eight and a half hours of confinement to "sewage-flooded cells" does not violate the Eighth Amendment).

Therefore, Plaintiff has not alleged DiChiara's direct participation in the alleged constitutional violations. *See Chamberlain v. City of White* Plains, 986 F. Supp. 2d. 363, 394–95 (S.D.N.Y. 2013) (explaining that the fact that the defendant "foresaw the possibility that lethal force could become necessary, depending how events unfolded, is not enough to make him responsible for [another defendant's] independent decision to" use excessive force, but when the first defendant later "said to 'do it again,'" this fact plausibly alleged his personal involvement in the second use of excessive force); *Sash v. United States*, 674 F. Supp. 2d. 531, 544 (S.D.N.Y. 2009) (finding no personal involvement when the plaintiff did not "contend that [the defendant] ordered [the other defendants] to use excessive physical force").

Nor does Plaintiff allege that DiChiara was aware of or otherwise permitted the ERT's use of excessive force on Plaintiff. In the "[r]elief" section of the Amended Complaint, Plaintiff requests that DiChiara "be demoted and put somewhere where he can't hurt anybody else (inmates) with the use of force." (*Id.* at 5.) Construing this statement liberally, it alleges, at most, that DiChiara is responsible for the ERT's use of force because of his supervisory position. However, the Amended Complaint is devoid of any factual allegations regarding DiChiara's knowledge that the ERT used force against Plaintiff. It therefore fails to plausibly allege DiChiara's personal involvement through failure to intervene—in other words, failing to remedy a known wrong or "exhibit[ing] deliberate indifference" to Plaintiff's rights "by failing to act on information indicating that unconstitutional acts were occurring." *Grullon*, 720 F.3d at 139.

Nor does Plaintiff allege that DiChiara was aware that the ERT had a history of using excessive force, such that the Court could reasonably infer that DiChiara gave the order knowing the ERT may use excessive force. *See id.* (listing as categories of personal involvement when a defendant allows "a policy or custom" of unconstitutional practices to continue or when he "was

11

grossly negligent in supervising subordinates who committed the wrongful acts"); *see also Sash*, 674 F. Supp. 2d. at 545 (finding no personal involvement where defendant was not "aware [other defendants] were going to use excessive force" and had no "realistic opportunity to intervene to prevent the harm from occurring" (internal quotation marks omitted)). As is, Plaintiff alleged only that DiChiara ordered the ERT—a team tasked with responding to emergencies—to remove Plaintiff from a potential emergency in the form of a flooding cell block. The Court therefore dismisses Plaintiff's claims against DiChiara for lack of personal involvement in the alleged constitutional violations.[8]

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").

Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein. The new amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain *all*

---

[8] Because the Court dismisses the Amended Complaint for failure to allege the Defendants' personal involvement, the Court need not reach DiChiara's alternative arguments regarding excessive force and qualified immunity. (Defs.' Mem. 11–12; Status Letter.) However, the Court notes that, because Plaintiff was a pretrial detainee at the time of the alleged events, his claims fall under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment."); *see also Kinglsey v. Hendrickson*, 135 S. Ct. 2466, 2472–73 (2015) (setting standard for excessive force claims brought by pretrial detainees).

of the claims and factual allegations Plaintiff wishes the Court to consider, including the specific actions or omissions of each Defendant that violated Plaintiff's constitutional rights. If Plaintiff fails to abide by the 30-day deadline, the claims against Cheverko and DiChiara could be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 38), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: December 13, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE